CV 12          6138

D. Maimon Kirschenbaum
Charles Joseph
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs, proposed*
*FLSA Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

CAROL HERAS, LISSETTE FIGUEROA,
VIVIANA BOTERO, and KATHERINE
MONSALVE, on behalf of themselves and
other similarly situated,

               **Plaintiffs,**

    **v.**

OTG MANAGEMENT, INC., OTG
MANAGEMENT T8 LLC, LAGUARDIA
USA LLC, and ERIC BLATSTEIN

             **Defendants.**

-------------------------------------------------------x

**INDEX NO.**

**COMPLAINT**

**FLSA COLLECTIVE ACTION AND**
**RULE 23 CLASS ACTION**

**DEMAND FOR JURY TRIAL**

    1.    Plaintiffs, on behalf of themselves and all others similarly situated, allege as

follows:

**JURISDICTION AND VENUE**

    2.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331

because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*

("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as

they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this District because Defendants conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## DEFENDANTS

4.     All Defendants are hereinafter collectively referred to as "Defendants."

5.     Defendant OTG Management, Inc. is a Pennsylvania Corporation whose principal place of business is located in Queens, New York. Upon information and belief, OTG Management LLC is a parent corporation that controls and directs the activities of the other Defendant corporations. Specifically, OTG Management, Inc. is a food service company that owns restaurants and eating establishments at various airports in the United States, including LaGuardia and John F. Kennedy Airports in Queens, New York.

6.     Defendant OTG Management LLC has an annual gross volume of sales in excess of $500,000.

7.     Defendant OTG Management T8 LLC is a Delaware Corporation. OTG Management T8 LLC operates various restaurants and eating establishments in Terminal 8 at John F. Kennedy International Airport ("JFK") in Queens, New York.

8.     Defendant OTG Management T8 LLC has an annual gross volume of sales in excess of $500,000.

9.     Defendant LaGuardia USA LLC is a New York Corporation. LaGuardia USA LLC operates various restaurants and eating establishments in LaGuardia Airport ("LaGuardia") in Queens, New York..

10.     Defendant LaGuardia USA LLC has an annual gross volume of sales in excess of $500,000.

11.     The Corporate Defendants are hereinafter referred to collectively as OTG.

12.     Defendant Eric Blatstein is an owner and shareholder of OTG.

13.     Upon information and belief, Defendant Blatstein exercises sufficient control of OTG's day to day operations to be considered an employer of Plaintiffs and those similarly situated under the FLSA.

14.     Defendant Blatsein has the power to hire and fire OTG employees.

15.     Upon information and belief, OTG's managerial employees ultimately report to Defendant Blatstein regarding issues such as employee pay rates, scheduling, and record-keeping.

## PLAINTIFFS-ALLEGATIONS

### Carol Heras

16.     Plaintiff Carol Heras was employed by Defendants as a server at Victory Grille, and times at JetRock and Slip Mahoney's in LaGuardia from 2007 until October 2012.

17.     Heras' schedule varied throughout her employment with Defendants. For example, at times she was scheduled to work 5 days per week for shifts that were officially eight hours, from 11:00 a.m. to 7:00 p.m.. These shifts often lasted much longer than 7:00 p.m., depending on how busy the restaurant was and the staffing for any given night.   On some occasions, her shifts lasted longer than 10 hours.  When Heras worked five shifts, she almost always worked overtime, though the precise amount varied from week to week, depending on how late her shifts lasted.

18.     At other times, Heras worked 4 similar shifts, and her overtime decreased, again depending on how late her shifts lasted.

19.     Many times, when Heras' clocked-in hours were approaching 40 in a workweek, her manager instructed her to finish her post-shift sidework after clocking out, so that she would not be clocked in for overtime work.  On these occasions, she was not paid for all of her hours worked, including regular and overtime hours.

20.     OTG paid Heras the tipped minimum wage for hours worked.

21.     When OTG did pay Heras for her overtime hours, they paid her at an incorrect overtime rate of 1.5 times her post tip-credit regular rate, instead of at 1.5 times her full regular rate minus the appropriate tip-credit.  For example in 2012, when the full minimum wage was $7.25 per hour and the New York tipped minimum wage was $5.00 per hour, OTG paid an overtime rate of $7.50.  However, under federal and state law, the appropriate overtime rate for employees paid at the tipped minimum wage was $7.25 (the full minimum wage) times 1.5, or $10.875, minus a tip credit of $2.25, for a total overtime rate of $8.625.

22.     Further, OTG illegally required Heras to share tips with tip-ineligible employees such as dishwashers and "utility" employees who delivered food to the restaurant.

23.     In addition, OTG did not properly notify Heras that it was applying a "tip credit" to her minimum wage.

24.     As a result, OTG was not entitled to pay Heras the tipped minimum wage under federal and state law.

25.     OTG did not pay Heras New York's spread of hours premium when her shifts lasted longer than 10 hours.

26.     OTG did not provide Heras with the appropriate notices under New York Labor Law § 195.  For example, Heras' weekly paystubs did not state what tip credit allowances were being taken against Heras' wages.

**Lissette Figueroa**

27.     Plaintiff Lissette Figueroa was employed by Defendants as a server at Victory Grille in LaGuardia from April 2011 until April 2012.

28.     At the beginning of her employment Figueroa worked 45-50 hours per week.  In or about March of 2012, she began working between 35 and 45 hours per week, depending on whether she worked three or four shifts.  On some occasions, her shifts lasted longer than 10 hours.

29.     Many times, Figueroa's manager clocked her out before she finished her shift, so that Figueroa would not be clocked in for overtime hours worked.  On these occasions, she was not paid for all of her hours worked, including regular and overtime hours.

30.     OTG paid Figueroa the tipped minimum wage ($5.00) for hours worked in the afternoon or evening and the full minimum wage ($7.25) for hours worked in the morning.

31.     When OTG did pay Figueroa for her overtime hours worked, they paid her at an incorrect overtime rate of 1.5 times her post tip-credit regular rate, instead of at 1.5 times her full regular rate minus the appropriate tip-credit, as described in Paragraph 21 above.  Further, because Figueroa was often paid a non-tip-credit minimum wage for time worked during the weeks in question, her regular rate for purposes of determining her overtime rate under federal and state law should have been a blend between the two rates she was paid, not simply 1.5 times the lowest rate she was paid in a given week.

32.     OTG illegally required Figueroa to share tips with tip-ineligible employees such as dishwashers and "utility" employees that delivered food to the restaurant.

33.     In addition, OTG did not properly notify Figueroa that it was applying a "tip credit" to her minimum wage.

34.     As a result, OTG was not entitled to pay Figueroa the tipped minimum wage under federal and state law.

35.     OTG did not pay Figueroa New York's spread of hours premium when her shifts lasted longer than 10 hours.

36.     OTG did not provide Figueroa with the appropriate notices under New York Labor Law § 195.  For example, Figueroa's weekly paystubs did not state what tip credit allowances were being taken against Figueroa's wages.

**Viviana Botero**

37.     Plaintiff Viviana Botero was employed by Defendants as a server at Victory Grille in LaGuardia from January 2012 until January 18, 2012.

38.     At the beginning of her employment Botero worked 45-50 hours per week.  At a later point in her employment, her scheduled decreased, though she at times continued to work overtime.

39.     Many times, Botero's manager clocked her out before she finished her shift so that Botero would not be clocked in for overtime.  On these occasions, Botero was not paid for all of her hours worked, including regular and overtime hours.

40.     OTG paid Botero the tipped minimum wage ($5.00) for hours worked in the afternoon or evening and the full minimum wage ($7.25) for hours worked in the morning.

41.     When OTG did pay Botero for her overtime hours, they paid her at an incorrect overtime rate of 1.5 times her post tip-credit regular rate, instead of at 1.5 times her full regular rate minus the appropriate tip-credit, as described in Paragraph 21 above.  Further, because Botero was often paid a non-tip-credit minimum wage for time worked during the weeks in question, her regular rate for purposes of determining her overtime rate under federal and state law should have been a blend between the two rates she was paid, not simply 1.5 times the lowest rate she was paid in a given week.

42.     Further, OTG illegally required Botero to share tips with tip-ineligible employees such as dishwashers and "utility" employees that delivered food to the restaurant.

43.     In addition, OTG did not properly notify Botero that it was applying a "tip credit" to her minimum wage.

44.     As a result, OTG was not entitled to pay Botero the tipped minimum wage under federal and state law.

45.     OTG did not pay Botero New York's spread of hours premium when her shifts lasted longer than 10 hours.

46.     OTG did not provide Botero with the appropriate notices under New York Labor Law § 195.  For example, Botero's weekly paystubs did not state what tip credit allowances were being taken against Botero's wages.

**Katherine Monsalve**

47.     Plaintiff Katherine Monsalve was employed by Defendants as a bartender at New York Sports Bar in JFK's Terminal 8 from October 2012 until the present.

48.     At the beginning of her employment Monsalve was scheduled to work roughly 35 hours per week.  However, her night shifts often lasted much longer than the scheduled 7

hours, sometimes lasting as long as 12 hours. Thus she often worked in excess of 40 hours, though the precise number varied depending on how long each night shift actually lasted. At a later point in her employment, her scheduled decreased, though she at times continued to work overtime, depending on whether she picked up evening shifts.

49.     Many times, Monsalve's manager clocked her out before she finished her shift so that Monsalve would not be clocked in for overtime. On these occasions, she was not paid for all of her hours worked, including regular and overtime hours.

50.     OTG paid Monsalve the tipped minimum wage ($5.00) for hours worked in the afternoon or evening and the full minimum wage ($7.25) for hours worked in the morning.

51.     When OTG did pay Monsalve for her overtime hours, they paid her at an incorrect overtime rate of 1.5 times her post tip-credit regular rate, instead of at 1.5 times her full regular rate minus the appropriate tip-credit, as described in Paragraph 21 above. Further, because Monsalve was often paid a non-tip-credit minimum wage for time worked during the weeks in question, her regular rate for purposes of determining her overtime rate under federal and state law should have been a blend between the two rates she was paid, not simply 1.5 times the lowest rate she was paid in a given week.

52.     In addition, OTG did not properly notify Monsalve that it was applying a "tip credit" to her minimum wage.

53.     As a result, OTG was not entitled to pay Monsalve the tipped minimum wage under federal and state law.

54.     OTG did not pay Monsalve New York's spread of hours premium when her shifts lasted longer than 10 hours.

55.     OTG did not provide Monsalve with the appropriate notices under New York Labor Law § 195.  For example, Monsalve's weekly paystubs did not state what tip credit allowances were being taken against Monsalve's wages.

## FLSA COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiffs bring the First and Second Claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b) on behalf of all non exempt persons employed by Defendants at any of their locations in any tipped position, *i.e.,* positions that were paid pursuant to federal tip-credits, on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective").

57.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them at the legally required minimum wage for all hours worked and one and one half times this rate for work in excess of forty (40) hours per workweek, and allowing non-tipped employees to share in their tips.  The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

58.     The First and Second Claims for Relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – LGA CLASS

59.     Plaintiffs Heras, Figueroa, and Botero ("LGA Plaintiffs") bring the Third,

Fourth, Fifth, Sixth and Claims for Relief pursuant to the Federal Rules of Civil Procedure

("F.R.C.P.") Rule 23, on behalf of all non exempt persons employed by Defendants at any

LaGuardia location in any tipped position on or after the date that is six years before the filing

of the Complaint in this case as defined herein (the "Class Period").

60.     The Class members are readily ascertainable.  The number and identity of the

LGA Class members are determinable from the records of Defendants.  The hours assigned and

worked, the positions held, and the rates of pay for each LGA Class member are also

determinable from Defendants' records. For purposes of notice and other purposes related to

this action, their names and addresses are readily available from Defendants.  Notice can be

provided by means permissible under said F.R.C.P. 23.

61.     The proposed LGA Class is so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the

court.  Although the precise number of such persons is unknown, and the facts on which the

calculation of that number are presently within the sole control of Defendants, upon

information and belief, there are more than fifty (50) members of the Class.

62.     LGA Plaintiffs' claims are typical of those claims which could be alleged by

any member of the LGA Class, and the relief sought is typical of the relief which would be

sought by each member of the LGA Class in separate actions.  All the LGA Class members

were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay

minimum wage and overtime compensation and spread of hours compensation, and illegal

retention of tips.  Defendants' corporate-wide policies and practices affected all LGA Class

members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each LGA Class member.  LGA Plaintiffs and other LGA Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

63.     LGA Plaintiffs are able to fairly and adequately protect the interests of the LGA Class and have no interests antagonistic to the LGA Class.  LGA Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

64.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual LGA Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual LGA Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the LGA Class would create a risk of inconsistent and/or varying adjudications with respect to the

individual members of the LGA Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

65. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

66. There are questions of law and fact common to the LGA Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendant employed LGA Plaintiffs and the LGA Class within the meaning of the New York law.

b) Whether Defendants paid LGA Plaintiffs and the LGA Class members the minimum wage for all hours worked.

c) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the LGA Class members at all.

d) At what common rate, or rates subject to common methods of calculation, was and is Defendants required to pay the LGA Class members for their work.

e)      Whether Defendants illegally retained portions of Plaintiffs' tips and the LGA Class members' tips.

f)      Whether Defendants properly compensated Plaintiffs and LGA Class members for overtime.

g)      Whether LGA Plaintiffs were forced to share their tips with parties who are not entitled to their tips.

h)      Whether LGA Plaintiffs were appropriately paid New York's spread of hours premium when their shifts lasted longer than 10 hours.

i)      Whether Defendants gave LGA Plaintiffs proper statements as required by New York Labor Law § 195.

## RULE 23 CLASS ALLEGATIONS – JFK CLASS

67.     Plaintiff Monsalve ("JFK Plaintiff") brings the Third, Fourth, and Fifth Claims for Relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non exempt persons employed by Defendants at any JFK location in any tipped position on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

68.     The Class members are readily ascertainable. The number and identity of the JFK Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rates of pay for each JFK Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P. 23.

69.     The proposed JFK Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than fifty (50) members of the Class.

70.     JFK Plaintiff's claims are typical of those claims which could be alleged by any member of the JFK Class, and the relief sought is typical of the relief which would be sought by each member of the JFK Class in separate actions. All the JFK Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage and overtime compensation and spread of hours compensation. Defendants' corporate-wide policies and practices affected all JFK Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each JFK Class member. JFK Plaintiff and other JFK Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

71.     JFK Plaintiff is able to fairly and adequately protect the interests of the JFK Class and have no interests antagonistic to the JFK Class. JFK Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

72.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual JFK Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual JFK Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the JFK Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the JFK Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

73. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

74.     There are questions of law and fact common to the JFK Class which predominate over any questions affecting only individual class members, including:

a)      Whether Defendant employed JFK Plaintiff and the JFK Class within the meaning of the New York law.

b)      Whether Defendants paid JFK Plaintiff and the JFK Class members the minimum wage for all hours worked.

c)      What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the JFK Class members at all.

d)      At what common rate, or rates subject to common methods of calculation, was and is Defendants required to pay the JFK Class members for their work.

e)      Whether Defendants properly compensated Plaintiffs' and JFK Class members for overtime.

f)      Whether JFK Plaintiff and the JFK Class were appropriately paid New York's spread of hours premium when their shifts lasted longer than 10 hours.

g)      Whether Defendants gave JFK Plaintiff and the JFK Class proper statements as required by New York Labor Law § 195.

## FIRST CLAIM FOR RELIEF
### (FLSA Claims, 29 U.S.C. §§ 201, *et seq.*,
### Brought by Plaintiffs on Behalf of
### Themselves and the FLSA Collective Plaintiffs)

75.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, reallege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

76.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed "employee[s]" including Plaintiffs and each of the FLSA Collective Plaintiffs.

77.     Throughout the statute of limitations period covered by these claims, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs the federal minimum wage for each hour worked.

78.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*
Brought by Plaintiffs on Behalf of Themselves
and the FLSA Collective Plaintiffs)**

79.     Plaintiffs, on behalf of themselves and other FLSA Collective Plaintiffs, reallege and incorporate by reference all previous paragraphs.

80.     Throughout the statute of limitations period covered by these claims, Plaintiffs and the other FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per workweek.

81.     At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay the Plaintiffs and FLSA Collective Plaintiffs at one and one half times the minimum wage for work in excess of forty (40) hours per workweek,

and willfully failing to keep records required by the FLSA even though the FLSA Collective Plaintiffs have been and are entitled to overtime.

82.    At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the FLSA Collective Plaintiffs at the required overtime rate of one and a half times the federal minimum wage for hours worked in excess of forty (40) hours per workweek.

83.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(New York State Minimum Wage Act, New York Labor Law §§ 650 *et seq.*
Brought by Plaintiffs on Behalf of Themselves, the JFK Class and the LGA Class)**

84.    Plaintiffs, on behalf of themselves and members of the JFK Class and the LGA Class, reallege and incorporate by reference all preceding paragraphs.

85.    Defendants knowingly paid the Plaintiffs and members of the JFK Class and the LGA Class less than the New York State minimum wage.

86.    Defendants did not pay Plaintiffs and members of the JFK Class and the LGA Class the New York minimum wage for all hours worked.

87.    Defendants' failure to pay Plaintiffs and members of the JFK Class and the LGA Class the New York minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

88.    As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the JFK Class and the LGA Class are entitled to an award of damages, including liquidated

damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FOURTH CLAIM FOR RELIEF**
**(New York Overtime Violations)**
**(New York Minimum Wage Act, N.Y. Stat. §§ 650 *et seq.*,**
**N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.4**
**Brought by Plaintiffs on Behalf of Themselves and the JFK Class and the LGA Class)**

89.     Plaintiffs, on behalf of themselves and the JFK Class and the LGA Class members, reallege and incorporate by reference all previous paragraphs.

90.     It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

91.     Throughout the Class Period, Defendants willfully, regularly and repeatedly failed to pay Plaintiffs and the members of the JFK Class and the LGA Class at the required overtime rate of one-and-one-half times the minimum wages for hours worked in excess of forty (40) hours per workweek.

92.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and members of the JFK Class and the LGA Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FIFTH CLAIM FOR RELIEF**
(New York Spread of Hours Provisions,
N.Y. Lab. L. § 650 *et seq.*, and N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6
Brought by Plaintiffs on Behalf of Themselves and the JFK Class and the LGA Class)

93.     Plaintiffs, on behalf of themselves and the members of the JFK Class and the

LGA Class, reallege and incorporate by reference all preceding paragraphs.

94.     Plaintiffs and the members of the JFK Class and the LGA Class regularly had

workdays that lasted more than ten (10) hours.

95.     Defendants willfully and intentionally failed to compensate Plaintiffs and

members of the JFK Class and the LGA Class one hour's pay at the basic New York minimum

hourly wage rate when their workdays exceeded ten (10) hours, as required by New York law.

96.     As a result of Defendants' willful and unlawful conduct, Plaintiffs and members

of the JFK Class and the LGA Class are entitled to an award of damages, including liquidated

damages, in amount to be determined at trial, pre- and post-judgment interest, costs and

attorneys' fees, as provided by N.Y. Lab. Law § 663.

**SIXTH CLAIM FOR RELIEF**
(New York Notice Requirements,
N.Y. Lab. L. §§195, 198
Brought by Plaintiffs on Behalf of Themselves and the JFK Class and the LGA Class)

97.     Plaintiffs, on behalf of themselves and the members of the JFK Class and the

LGA Class, reallege and incorporate by reference all preceding paragraphs.

98.     Defendants did not provide Plaintiffs and the members of the JFK Class and the

LGA Class with the notices required by N.Y. Lab. Law § 195.

99.     As a result of Defendants' unlawful conduct, Plaintiffs and members of the

Class are entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be

determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

## SEVENTH CLAIM FOR RELIEF
### (Illegal Deductions from Gratuities, N.Y. Lab. L. §§ 193, 196-d and 198-b Brought by the LGA Plaintiffs on Behalf of Themselves and the LGA Class)

100.    Plaintiffs Heras, Figueroa, and Boreto, on behalf of themselves and the members of the LGA Class, reallege and incorporate by reference all previous paragraphs.

101.    Defendants willfully retained portions of the LGA Plaintiffs' tips and LGA Class members' tips.

102.    As a result of Defendants' willful and unlawful conduct, the LGA Plaintiffs and members of the LGA Class are entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA Collective Plaintiffs and members of the JFK Class and the LGA Class, pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs (asserting FLSA claims and state claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.    Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

C.   Designation of this action as a class action pursuant to F.R.C.P. 23.

D.   Designation of Plaintiffs Heras, Figueroa, and Boreto as Representatives of the LGA Class.

E.   Designation of Plaintiffs Monsalve as Representatives of the JFK Class.

F.   An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

G.   Penalties available under applicable laws;

H.   Costs of action incurred herein, including expert fees;

I.   Attorneys' fees, including fees pursuant to 29 U.S.C. § 216,  N.Y. Lab. L. § 663 and other applicable statutes;

J.   Pre-Judgment and post-judgment interest, as provided by law; and

K.   Such other and further legal and equitable relief as this Court deems necessary, just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated:  New York, New York
        December 12, 2012

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: _____
    D. Maimon Kirschenbaum
    Charles Joseph
    233 Broadway, 5th Floor
    New York, NY 10279
    Tel: (212) 688-5640
    Fax: (212) 688-2548

*Attorneys for Named Plaintiff, proposed FLSA Collective Plaintiffs, and proposed Class*

**Exhibit A**

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **LAGUARDIA USA LLC AND RELATED INDIVIDUALS/ ENTITIES** and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

Carol Heras
Full Legal Name (Print)

Signature

10/26/12
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **LAGUARDIA USA LLC AND RELATED INDIVIDUALS/ ENTITIES** and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

_Lissette Figueroa_

Full Legal Name (Print)

_[signature]_

Signature

_12/5/12_

Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by **LAGUARDIA USA LLC AND RELATED INDIVIDUALS/ ENTITIES** and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

*Viviana Botero*

Full Legal Name (Print)

*Viviana Botero*

Signature

12-05-12

Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by OTG  Management
and/or related entities and/or individuals. I consent to be a plaintiff in an action to collect
unpaid wages. I agree that I am bound by the terms of the Professional Services
Agreement signed by the named plaintiffs in this case.


Katherine monsalve
Full Legal Name (Print)

Katherine monsalve
Signature

Dec 4, 2012
Date