**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**CAROL HERAS, LISSETTE FIGUEROA,**
**VIVIANA BOTERO, and KATHERINE**          **INDEX NO: 12 CV 6138 (ERK) (VVP)**
**MONSALVE, on behalf of themselves and**
**other similarly situated,**

                    **Plaintiff,**

          **v.**

**OTG MANAGEMENT, INC., OTG**
**MANAGEMENT T8 LLC, LAGUARDIA**
**USA LLC, and ERIC BLATSTEIN,**

                    **Defendants.**
-------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
233 Broadway, 5th Floor
New York, NY 10279
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Plaintiffs, FLSA Collective Plaintiffs, and the proposed class*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND .................................................................................................................. 2

    A.   Procedural History ........................................................................................................ 2

    B.   Discovery ....................................................................................................................... 3

    C.   Settlement Discussions .................................................................................................. 4

III.  SUMMARY OF SETTLEMENT TERMS ......................................................................... 4

    A.   Settlement Fund ............................................................................................................. 4

    B.   The Release .................................................................................................................... 5

    C.   Attorneys' Fees And Costs And Service Awards .......................................................... 6

IV.   ARGUMENT ....................................................................................................................... 6

    A.   The Class Should Be Conditionally Certified For Settlement Purposes ........................ 7

        i.    Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a) ................................... 8

            a.    Numerosity is satisfied ........................................................................................... 8

            b.    Commonality is satisfied ......................................................................................... 9

            c.    Typicality is satisfied ........................................................................................... 10

            d.    Adequate representation is satisfied ..................................................................... 11

        ii.   The Court Should Certify The Settlement Class Under Rule 23(b)(3) ...................... 11

            a.    Common questions predominate ........................................................................... 12

            b.    A class action is a superior mechanism ............................................................... 13

        iii.  The Court should appoint Plaintiffs' counsel as class counsel ................................. 13

    B.   Preliminary Approval Of The Agreement Is Appropriate ............................................. 14

        i.    There are no grounds to doubt the fairness of the agreement, which is the product of
        extensive, arm's length negotiations .......................................................................... 16

i

ii.     The settlement contains no obvious deficiencies ........................................................ 17

iii.    The settlement falls within the range of possible approval ........................................ 18

C.    The Proposed Plan Of Class Notice ................................................................................. 20

V.   CONCLUSION .................................................................................................................. 22

Plaintiffs Carol Heras, Lissette Figueroa, Viviana Botero, and Katerin Monsalve (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, respectfully submit this memorandum of law in support of their motion for preliminary approval of the Joint Stipulation of Settlement and Release dated July 24, 2014 ("Settlement Agreement") and the July 25, 2014 addendum thereto.[1]  Defendants OTG Management, Inc., OTG Management T8 LLC, LaGuardia USA, and Eric Blatstein (collectively, "Defendants") have agreed to the terms of the Settlement Agreement and do not object to the relief requested herein.

## I.    INTRODUCTION

Subject to Court approval, the parties have settled this case for $500,000.  The proposed settlement resolves the claims asserted in this action and satisfies all of the criteria for preliminary settlement approval under federal law.  Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement; (2) conditionally certify the settlement class under Fed. R. Civ. P. 23(b)(3); (3) appoint Joseph & Kirschenbaum LLP ("JK") as class counsel; (4) approve the Notice of Proposed Class Action Lawsuit Settlement (the "Notice") and the parties' plan for its distribution; (5) set a deadline of 60 days from the mailing of Notice for Settlement Class Members to object to the settlement or opt out of the Class; and (5) schedule a hearing ("Fairness Hearing") at which the Court will consider Plaintiffs' motion for final approval of the settlement, attorneys' fees and costs, and enhancement awards

Preliminary approval and conditional class certification will allow the parties to notify the Class Members of the settlement and of their right to object or opt out.  Preliminary approval

---

[1]    In support of this motion, Plaintiffs submit the July 25, 2014 declaration of Denise A. Schulman ("Schulman Decl."), attaching thereto as Exhibit 1 ("Ex. 1") a true and correct copy of the Settlement Agreement, as Exhibit 2 ("Ex. 2") a true and correct copy of the July 25, 2014 addendum to the Settlement Agreement, as Exhibit 3 ("Ex. 3")  a true and correct copy of the proposed Notice, and as Exhibit 4 ("Ex. 4") a proposed order.

does not require the Court to rule on the ultimate fairness of the settlement, but to make only an "initial evaluation" of the fairness of the proposed settlement and whether there is "probable cause" to submit it to the class members. *See In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (the court need only find "'probable cause' to submit the [settlement] to class members and hold a fullscale hearing as to its fairness"); *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC),No. 04 Civ. 4488 (PAC), No. 06 Civ. 5672 (PAC), 2009 U.S. Dist. LEXIS 108736, at *14-15 (S.D.N.Y. Nov. 17, 2009) (same). The Court should permit notice of the settlement to be sent to class members because the settlement falls within the "range of possible approval." *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316 (PAC), 08 Civ. 8531 (PAC), 08 Civ. 9627 (PAC), 2010 U.S. Dist. LEXIS 75362, at *11 (S.D.N.Y. Jun. 1, 2010).

## II.    BACKGROUND

### A.    Procedural History

Plaintiffs are former service employees at Defendants' restaurants and bars located at LaGuardia Airport ("LaGuardia") and John F. Kennedy International Airport ("JFK") in Queens, New York.  On December 14, 2012, Plaintiffs filed this lawsuit against Defendants asserting, among other claims, that Defendants (1) paid tipped employees at the wrong overtime rate; (2) failed to pay tipped employees New York's spread of hours premium when their workdays lasted longer than ten (10) hours; (3) unlawfully misappropriated a portion of LaGuardia Terminal C tipped employees' tips in violation of New York Labor Law § 196-d ("§ 196-d"); (4) improperly paid LaGuardia Terminal C tipped employees pursuant to a tip credit in violation of the Fair Labor Standards Act ("FLSA"); and (5) did not pay LaGuardia Terminal C service employees for all hours worked.  (Schulman Decl. ¶ 5.)  Plaintiffs brought this action on behalf of themselves and all other non-exempt tipped employees employed by Defendants at LaGuardia

Terminals C, D, or Marine Air and/or JFK Terminal 8 within the last three years for the FLSA claims and within the six years prior to the filing of this lawsuit for the New York claims.  (*Id*. at ¶ 4.)

With respect to the overtime claim, Plaintiffs allege that Defendants paid tipped employees overtime at a rate of one and a half time the tip credit minimum wage, rather than one and a half times the full minimum wage, minus the tip credit.  (*Id*. at ¶ 6.)  Plaintiffs further allege that prior to January 1, 2013, Defendants did not pay tipped employees New York's spread of hours premium when their workdays exceeded ten hours.  (*Id*. at ¶ 7.)  At LaGuardia Terminal C, Plaintiffs allege that Defendants (1) required tipped employees to share tips with non-service employees (specifically, utility workers and dishwashers) who were not eligible to receive tips because they did not provide direct customer service and (2) required tipped employees to work off the clock without compensation.  (*Id*. at ¶ 8.)  Defendants deny Plaintiffs allegations and maintain that their compensation practices were lawful.

On or around July 29, 2012, Defendants consented to send notice of the FLSA claims in this action to all non-exempt tipped employees who worked at LaGuardia and/or JFK on or after three years prior to the mailing of notice.  In addition to the named Plaintiffs, there are 33 Opt-In Plaintiffs who submitted consent to sue forms and are Plaintiffs in this action.  (*Id.* at ¶ 9.)

**B.   Discovery**

The parties completed pre-class certification discovery.  Defendants produced Class Members' time and payroll records; as well as, *inter alia*, the Plaintiffs and Opt-In Plaintiffs' personnel files and various policy materials.  Plaintiffs deposed a representative of the corporate Defendants, two LaGuardia managers, and LaGuardia's money room manager.  (*Id*. at ¶10.)

3

Defendants deposed a total of nine named and Opt-In Plaintiffs.  This discovery allowed all parties to evaluate the strengths and weaknesses of Plaintiffs' claims and to calculate damages.

### C.      Settlement Discussions

In November 2013, Plaintiffs made a settlement demand.  (*Id*. at ¶ 11.)  In January 2014, the parties agreed to mediate this case.  The mediation was held on March 11, 2014 before Carol Wittenberg, an experienced employment law mediator at JAMS.  (*Id*. at ¶ 12.)  The parties were unable to reach a resolution at the mediation, as their calculations of spread of hours damages were extremely far apart.  However, the parties continued to communicate about the discrepancy after the mediation.  After the mediation, Defendants agreed to provide Plaintiffs with more detailed records supporting their spread of hours calculation.  Based on a detailed review of these records, Plaintiffs revised their spread of hours calculation downwards.  (*Id*. at ¶ 13.)  Mediator Wittenberg continued to assist the parties in negotiating a resolution, and in April 2014 the parties ultimately agreed to settle this action for $500,000.  (*Id*. at ¶ 14.)

## III.    SUMMARY OF SETTLEMENT TERMS

### A.      Settlement Fund

The Settlement Agreement provides that Defendants shall pay a maximum settlement amount of Five Hundred Thousand Dollars ($500,000.00) (the "Settlement Payment").  (Ex. 1 ¶¶ 1.24, 3.1.)  The Settlement Payment includes attorneys' fees and costs, awards to Class Members and Opt-In Plaintiffs, service awards, and the claims administrator's expenses.  (*Id*. at ¶¶ 3.1, 3.2, 3.3, 3.4.)

Under the Settlement Agreement, each Class Member will receive from the Net Settlement Fund (1) all overtime compensation owed to her as a result of being paid an overtime rate of one and a half times the tip credit minimum wage; (2) all spread of hours compensation

spread of hours compensation owed to her; and (3) liquidated damages due on the overtime and spread of hours damages. (*Id*. at ¶¶ 1.19, 1.25, 3.4.) The remaining portion of the Net Settlement Fund will be distributed among Class Members who worked at LaGuardia Terminal C, where Plaintiffs asserted claims for misappropriated gratuities and off the clock work, on an hours worked basis. (*Id*. at ¶ 3.4.) Opt-In Plaintiffs who worked at LaGuardia Terminal C will receive 1.25 points per hour worked during the FLSA period (as opposed to 1 point per hour worked for non-Opt-In Plaintiffs) because they have an additional claim for FLSA liquidated damages. (*Id*.)

No person eligible for payment under the Settlement Agreement will receive less than $50. Class Members who began working for Defendants on or after January 1, 2013 will receive $50. (*Id*.) This reflects the fact that Defendants changed their practices on or about January 1, 2013 in a way that significantly decreased the likelihood that Plaintiffs would prevail on their claims after that time.

Within fourteen (14) days after this Court enters final approval of the settlement, Defendants will deliver to the Claims Administrator all payments due under the Settlement Agreement. (*Id*. at ¶ 3.1.) The Claims Administrator will mail Class Members their settlement checks no later than 28 days after the Effective Date. (*Id*.) All settlement checks will be valid for 90 days, and applicable tax withholdings will be made. (*Id*. at ¶ 3.4.)

**B.    The Release**

In return for the above consideration, all Class Members who do not opt out of the Class will release all non-FLSA wage and hour claims, and all FLSA Opt-In Plaintiffs will also release all FLSA claims. (*Id*. at ¶ 4.1.)

### C.  Attorneys' Fees And Costs And Service Awards

JK will apply for a percentage of the Maximum Settlement Amount as attorneys' fees as well as reimbursement of its actual costs.  (*Id*. at ¶ 3.2.)  The Court need not rule on fees and costs now.  JK will file a formal motion for approval of fees and costs along with their motion for final approval of the settlement.  *See* Fed. R. Civ. P. 23(h).

In addition to their individualized awards, the named Plaintiffs and five of the Opt-In Plaintiffs, all of whom actively participated in this lawsuit and spent many hours working with JK, will apply for an additional payments totaling $27,500 in recognition of the services they rendered on behalf of the Class.  Plaintiffs will make this motion simultaneously with their motion for final approval of the Settlement Agreement.  (*Id*. at ¶ 3.3.)  Such service awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation."  *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *26 (E.D.N.Y. Jan. 20, 2010).

Both the application for attorneys' fees and costs and the application for service awards are separate from approval of the Settlement Agreement, and will be fully briefed prior to final approval.  Thus, the Court need not decide those issues now.

## IV.  ARGUMENT

Fed. R. Civ. P. 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Judicial proceedings under Fed. R. Civ. P. 23 ("Rule 23") have established a defined procedure and specific criteria for settlement approval in class action settlements. There are four necessary steps:

(1) Certifying the class for settlement purposes;

(2) Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval and certification of settlement classes;

(3) Dissemination of mailed and/or published notice of settlement to all affected Class members; and

(4) A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See Khait,* 2010 U.S. Dist. LEXIS 4067 at *4; *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005). These procedures safeguard class members' procedural due process rights and enable the court to fulfill its role as the guardian of class interests. *Torres*, 2010 U.S. Dist. LEXIS 75362 at *9-10.

With this motion, Plaintiffs request that the Court take the first three steps in the settlement approval process by certifying the class for settlement purposes and granting preliminary approval of the Settlement Agreement, approving the Notice, and authorizing distribution of the Notice.

### A.    The Class Should Be Conditionally Certified For Settlement Purposes

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes. *See e.g., Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997) (explaining that courts should examine whether the proposed class would be adequately represented and fairly treated by a class action settlement). Conditional settlement approval, class certification, and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement agreement, and setting the date and time of the final approval hearing. *Dorn v. Eddington Sec.*, No. 08 Civ. 10271 (LTS), 2011 U.S. Dist. LEXIS 11931, at *3 (S.D.N.Y. Jan. 20, 2011).

The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001), *abrogated on other grounds by Miles v. Merrill Lynch & Co. (In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006).  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court has great discretion in determining whether to certify a class.  *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998).  *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143 (ENV)(RER), 2010 U.S. Dist. LEXIS 139137 at *5-6 (E.D.N.Y. Nov. 12, 2010).  However, in exercising this discretion, courts should give "proper deference to the private consensual decision of the parties."  *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10 (citation omitted).

### i.      Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)

The Class is defined as all non-exempt tipped employees of Defendants who worked for OTG Management T8 LLC and/or LaGuardia USA, LLC from December 14, 2006 to the date of preliminary settlement approval.  (Ex. 1 ¶ 1.15.)  The Class meets the requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a).

### a.      Numerosity is satisfied

The parties estimate that the Class includes several hundred.  (Schulman Decl. ¶ 15.) Thus, the Class is so numerous that joinder of all Class Members is impracticable.  *See*

*Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

> **b.     Commonality is satisfied**

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982). *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

Here, there are several questions of law and fact common to the Settlement Class, including (1) whether Defendants miscalculated the overtime rate for employees paid pursuant to the tip credit; (2) whether Defendants paid tipped employees spread of hours compensation prior to 2013; (3) whether Defendants required tipped employees at LaGuardia Terminal C to share tips with non-service employees; and (4) whether Defendants failed to pay tipped employees at LaGuardia Terminal C for all hours worked. *See, e.g., Rosario v. Valentine Ave. Disc. Store, Co.,* 10 CV 5255, 2013 U.S. Dist. LEXIS 77183, at *17-18 (E.D.N.Y. May 31, 2013) ("In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices."); *Morris v. Alle Processing Corp.*, 08-CV-4874, 2013 U.S. Dist. LEXIS 64534, at *26 (E.D.N.Y. May 6, 2013) ("The named plaintiffs' claims and the proposed class members' claims arise from the same course of conduct (defendants' practice and policy of failing to pay wages and overtime)[.]").

### c.      Typicality is satisfied

Typicality is also satisfied.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 182 (W.D.N.Y. 2005).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted).  *See, e.g., Campos v. Goode*, 10 Civ. 0224 (DF), 2011 U.S. Dist. LEXIS 22959, at *6-7 (S.D.N.Y. Mar. 4, 2011) (finding typicality met because "[t]he named plaintiffs suffered the same alleged injury as did the class members — Defendants' failure to pay overtime and "because Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims").  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *Gortat v. Capala Bros.*, 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *13 (E.D.N.Y. Apr. 9, 2010).

Here, typicality is satisfied because "each class member's claim 'arises from the same course of events,' produced by a 'single system,' namely Defendants'" policies regarding the calculation of overtime and payment of spread of hours compensation at all terminals, and policies regarding tip sharing and time shaving at LaGuardia Terminal C.  *Spicer*, 269 F.R.D. at 337.

#### d.      Adequate representation is satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members."  *Toure v. Central Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)) (internal quotation marks omitted).  "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

Here, Plaintiffs are adequate representatives of the proposed class, have fairly and adequately represented and protected the interests of all Class Members, and have worked hard in achieving this settlement.  (Schulman Decl. ¶ 16.)  There is no indication here that the Plaintiffs' and the Class Members' interests are at odds.  Accordingly, adequacy is satisfied.

#### ii.      The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

In sum, the Class is suitable for certification, and the Court should certify the Class

pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the Agreement.

### a.      Common questions predominate

Predominance requires that "the issues in the class action that are subject to generalized

proof, and thus applicable to the class as a whole, . . . predominate over those issues that are

subject only to individualized proof." *In re Visa Check/MasterMoney*, 280 F.3d at 136.  The

essential inquiry is whether "liability can be determined on a class-wide basis, even when there

are some individualized damage issues." *Id.* at 139.  Where plaintiffs are "unified by a common

legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City

of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the Class are unified by common factual allegations – that

Defendants failed to pay tipped employees the correct overtime and failed to pay spread of hours

premium.  Class Members who worked at LaGuardia Terminal C were also subject to uniform

policies of requiring tipped employees to share tips with tip-ineligible workers and requiring

tipped employees to work off the clock.  The Class is also unified by a common legal theory –

that the aforementioned facts violated New York law.  *See Shahriar v. Smith & Wollensky Rest.

Group, Inc*., 659 F.3d 234, 253 (2d Cir. 2011) ("Finally, as to Rule 23(b)(3)'s requirement that

class-wide issues predominate over individual issues, Plaintiffs have alleged that all servers were

subject to Park Avenue's uniform tip-sharing or tip-pooling system."); *Castagna v. Madison

Square Garden, L.P.*, 09-CV-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 24885, at *4-5

(S.D.N.Y. Feb. 8, 2011) ("'Common factual allegations — that Defendant failed to pay Class

Members for all overtime they worked - and a common legal theory — that Defendant violated

the FLSA and NY Labor Law – predominate over any factual or legal variations among class

members.'") (citation omitted); *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S.

12

Dist. LEXIS 87644, at *7-8  (S.D.N.Y. Aug. 23, 2010) (same).  Accordingly, predominance is satisfied.

### b.    A class action is a superior mechanism

Rule 23(b)(3)'s second part analyzes whether "'the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy.'"  Fed. R. Civ. P. 23(b)(3); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions, and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations.  Concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within its jurisdiction. Employing the class device here will achieve economies of scale for putative Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications.  *Campos*, 2011 U.S. Dist. LEXIS 22959 at *8.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (individual actions for relatively small claims would result in less "settlement leverage, significantly reduced resources and no greater prospect for recovery").

### iii.    The Court should appoint Plaintiffs' counsel as class counsel

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, the Court must consider counsel's (1) work in identifying or

investigating potential claims; (2) experience in handling class actions or other complex

litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and

(4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(C).

Plaintiffs' counsel meet all relevant criteria. They did substantial work identifying,

investigating, prosecuting, and settling the claims; have substantial experience prosecuting and

settling wage and hour class actions; are well-versed in wage and hour and class action law; and

are well-qualified to represent the interests of the class.  (Schulman Decl. ¶¶ 17-21.)  Courts have

repeatedly found Plaintiffs' Counsel to be adequate class counsel in wage and hour class actions.

*Sand*, 2011 U.S. Dist. LEXIS 36266 at *6 ("Plaintiffs' counsel, . . . Joseph, Herzfeld, Hester &

Kirschenbaum, LLP . . ., have a record of competent and successful prosecution of large wage

and hour class actions, and the attorneys working on this case are competent and experienced.").

*See also, e.g., Shahriar*, 659 F.3d 234 (affirming district court's certification of Rule 23 class of

restaurant servers with JK as class counsel); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y.

2010).  (*See also* Schulman Decl. ¶¶ 18-21.)

Therefore, the Court should appoint the undersigned to serve as Class Counsel pursuant

to Rule 23(g).

**B.     Preliminary Approval Of The Agreement Is Appropriate**

There is a strong preference in the law for the resolution of class action litigation through

settlement.  *See McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart*

*Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial

policy in favor of settlements, particularly in the class action context"); *Cohen v. J.P. Morgan*

*Chase & Co*., 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("'The compromise of complex litigation is

encouraged by the courts and favored by public policy.'") (citations omitted).

14

Preliminary approval is the first step in the settlement process.  It simply allows notice to issue to the class and for class members to object or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input at a fairness hearing.   It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement."  *In re Initial Public Offering,* 226 F.R.D. at 191.  Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement.  *In re Prudential Sec. Inc. Ltd. Pshps. Litig*., 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Torres*, 2010 U.S. Dist. LEXIS 75362 at *10-11; Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), § 11.25 (4th ed. 2002).  The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n*, 627 F.2d at 634; *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).  *See also Danieli v. IBM*, No. 08 Civ. 3688 (SHS), 2009 U.S. Dist. LEXIS 106938, at *12 (S.D.N.Y. Nov. 16, 2009) (granting preliminary approval

where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank*, 228 F.R.D. at 184. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *Khait*, 2010 U.S. Dist. LEXIS 4067 at *13 (same); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same). *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("When a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness."). "Consequently, when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement 'into a trial or a rehearsal of the trial.'" *Wright*, 553 F. Supp. 2d at 343-44 (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)). *See also Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) ("[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits.") (internal citations omitted).

### i.      There are no grounds to doubt the fairness of the agreement, which is the product of extensive, arm's length negotiations

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations." *In re Medical X-Ray Film*

*Antitrust Litig.,* Master File No. CV 93-5904 (CPS), 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997).

The proposed settlement here is the product of extensive negotiations, including a mediation.  The negotiations were at all times hard-fought and at arm's length, and have produced a result that experienced counsel believe to be in the best interests of the Settlement Class.  *See Clark*, 2010 U.S. Dist. LEXIS 47036 at *17-18 (where the settlement was achieved through experienced counsels' arm's-length negotiations, then, "[a]bsent fraud or collusion," "'[c]ourt[s] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'") (citation omitted); *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted).  Moreover, where, as here, the settlement is the by-product of a mediation, there is a presumption of fairness and arm's-length negotiations.  *E.g.*, *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *2-3 (S.D.N.Y. Jan. 20, 2011) ("The assistance of an experienced class action employment mediator . . . reinforces that the Settlement Agreements are non-collusive."); *McAnaney v. Astoria Fin. Corp.*, No. 04 Civ. 1101, 2011 U.S. Dist. LEXIS 114768, at *17 (E.D.N.Y. Feb. 11, 2011) ("[T]he parties participated in six in-person mediation conferences and five telephone conferences before Magistrate Judge Wall.  The Court therefore concludes that the Settlement is procedurally fair, and is entitled to a presumption of being fair, reasonable and adequate.").

### ii.      The settlement contains no obvious deficiencies

The proposed settlement has no obvious deficiencies. The settlement provides for only modest service awards for the named Plaintiffs and five Opt-In Plaintiffs, all of whom actively participated in the litigation, thereby facilitating a resolution of this matter, in a *total* amount of

$27,500.  These individuals expended significant time participating in discovery and communicating with counsel.  Service awards for time, effort, risk and service do not improperly grant preferential treatment to class representatives.  Rather, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff."  *Khait,* 2010 U.S. Dist. LEXIS 4067 at *26 (approving awards of $15,000 and $10,000 for named plaintiffs in a wage and hour class action).

Finally, the settlement does not mandate excessive compensation for JK, which will apply for an award of attorneys' fees not to exceed one-third of the settlement fund and reimbursement of expenses.  This is well "within the range of reasonable attorney fees awarded in the Second Circuit."  *deMunecas v. Bold Food, LLC*, 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *22-23 (S.D.N.Y. Aug. 23, 2010) ("Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit.") (citing cases).

> In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL.

*Khait,* 2010 U.S. Dist. LEXIS 4067 at *22-23 (internal citations omitted).

### iii.    The settlement falls within the range of possible approval

As explained above, the Settlement Agreement was reached only after a mediation and protracted arms' length negotiations between the parties and their counsel who fully considered

the advantages and disadvantages of continued litigation.  Counsel for the parties believe that

this settlement achieves all of the objectives of the litigation, namely a substantial monetary

settlement to those employees of Defendants who were not paid all wages due.

JK, which has a great deal of experience in the prosecution and resolution of wage and

hour class actions, has carefully evaluated the merits of this case and the proposed settlement.

Even if the matter were to proceed to trial, JK acknowledges that the apparent strength of the

claims in this case is no guarantee against a complete or partial defense verdict.  "Litigation

inherently involves risks." *deMunecas*, 2010 U.S. Dist. LEXIS 87644 at *14 (citation omitted).

Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the

uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969);

*Campos*, 2011 U.S. Dist. LEXIS 22959 at *13 (same).  Nonetheless, under this settlement, all

Class Members will receive 100% recovery of compensatory and liquidated damages on their

spread of hours and overtime rate claims.  Class Members who worked at LaGuardia Terminal C

will also receive compensation for their claims of misappropriated tips and off the clock work,

which claims have been sharply disputed by Defendants and would have to be proven by

testimony rather than documentary evidence.

Weighing the benefits of the settlement against the risks associated with proceeding in

the litigation, the settlement amount in the Agreement is more than reasonable.  *See Velez v.*

*Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at *40-41

(S.D.N.Y. Nov. 30, 2010) ("[C]ourts often approve class settlements even where the benefits

represent 'only a fraction of the potential recovery.'"); *Officers for Justice v. Civil Serv.*

*Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well settled that a cash settlement amounting

to only a fraction of the potential recovery will not *per se* render the settlement inadequate or

19

unfair.").  (collecting cases); *Cf. Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at

least in theory, why a satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery."); *Cagan v. Anchor Sav. Bank FSB*,

No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34-35 (E.D.N.Y. May 17, 1990) (approving

$2.3 million class settlement over objections that the "best possible recovery would be

approximately $121 million").

      The determination of whether a settlement amount is reasonable "does not involve the

use of a 'mathematical equation yielding a particularized sum.'"  *Khait*, at *18 (quoting *Frank*,

228 F.R.D. at 186).  "Instead, 'there is a range of reasonableness with respect to a settlement – a

range which recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*

"[A] 'settlement agreement achieved through good-faith, non-collusive negotiation does not have

to be perfect, just reasonable, adequate and fair.'"  *Dupler v. Costco Wholesale Corp.*, 705 F.

Supp. 2d 231, 246-47 (E.D.N.Y. 2010) (quoting *Joel A. v. Guiliani*, 218 F.3d 132, 144 (2d Cir.

2000)).  Furthermore, even if a judgment were obtained against Defendants at trial, the relief

might be no greater, and indeed might be less, than that provided by the proposed Settlement.

      Thus, the Court should grant preliminary approval of the Settlement Agreement and

direct that notice of it be given to the Class.

### C.    The Proposed Plan Of Class Notice

 "For any class certified under Rule 23(b)(3), the court must direct to class members the

best notice practicable under the circumstances, including individual notice to all members who

can be identified through reasonable effort."  Fed. R. Civ. P.23(c)(2)(B).  *See also Eisen v.*

*Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974)  ("[E]ach class member who can be identified

through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (internal citations omitted). Notice is "adequate if it may be understood by the average class member." *Newberg* § 11:53.

Here, the Claims Administrator will disseminate the Notice to all Class Members via first class mail at their last known addresses as maintained by Defendants. For any Notice returned as undeliverable, the Claims Administrator will attempt a skip trace using the computer databases available and the information provided by Defendants. Those individuals who are located using the skip trace will be sent an additional copy of the Notice. Thus, the proposed methods of notice comport with Rule 23 and the requirements of due process.

As for the content of the notice, Rule 23(c)(2)(B) provides:

The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:

- the nature of the action,

- the definition of the class certified,

- the class claims, issues, or defenses,

- that a class member may enter an appearance through counsel if the member so desires,

- that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Notice comports with the rule in all respects.  It describes the terms of the settlement, including the proposed allocation of attorneys' fees and service awards, provides specific information regarding the date, time, and place of the final approval hearing, clearly provides that Class Members may enter an appearance through their own counsel, discloses Class Members' right to exclude themselves from the settlement or object to any of its terms, and specifies the deadline and procedure for doing so, and warns of the binding effects of the settlement on those persons who remain in the Class.  *See Willix,* 2010 U.S. Dist. LEXIS 139137 at *9 (approving notice where it "adequately puts *Rule 23* Class Members on notice of the proposed settlement"); *In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally").  (*See also* Ex. 2.)

Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Class.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant Plaintiffs' motion for preliminary approval of the proposed settlement, conditional certification of the Settlement Class, and approval of the Notice.

22

Dated:  July 25, 2014                    Respectfully submitted,
        New York, New York


                                         /s/ Denise A. Schulman
                                         D. Maimon Kirschenbaum
                                         Denise A. Schulman
                                         JOSEPH & KIRSCHENBAUM LLP
                                         233 Broadway, 5th Floor
                                         New York, NY 10279
                                         (212) 688-5640
                                         (212) 688-2548 (fax)

                                         *Attorneys for Plaintiffs, FLSA Collective Plaintiffs,
                                         and the proposed class*